Mr. Morgan. Good morning. I'm a police clerk. My name is Jeff Morgan. I'm representing the appellants Barco, N v. and EIZO. Your Honors, this appeal deals with the rule against recapture under 35 U.S.C. 251. The central issue on this appeal is whether Barco clearly and unmistakably surrendered all subject matter that did not include a pixel response limitation during the prosecution of the original patent. We contend that no, it did not make such a clear and unmistakable surrender. The district court erred in determining that Barco had made a surrender, and as a result, the district court erroneously invalidated all of Barco's reissued claims at issue on this appeal. Mr. Morgan Looking at a case like Hester, the cooking solely with steam limitation was always in the claim from the very beginning, and the prosecution said, the prior art uses steam and something else for cooking, infrared. I'm just solely with steam. Therefore, give me my patent. And eventually, on the strength of that argument, got a patent. And then on reissue, basically did away with the restriction on solely with steam. And this court said, no, based on the way you argued your case during the original prosecution, you basically surrendered the right to not have solely with steam limitation. So why wouldn't that just apply directly to the facts of this case? You argued, hey, I have a measurement limitation here, and there is no reference here that teaches the measurement limitation. So give me my patent. An examiner withdrew the rejection. So why wouldn't the Hester articulation that you basically surrendered now through your limitation in a reissue claim? Mr. Morgan I actually think that Hester helps us in this case rather than hurts us. Hester is a very clear case of what a patent applicant has to do and say in order to clearly and unmistakably surrender subject matter. In Hester, the patent applicant argued 27 times in six different papers over the course of was critical and very material, those were the patent applicant's words, to its invention. That kind of emphatic, deliberate statement is what this court has always held to be a clear and unmistakable surrender. Mr. Chodos We wouldn't want to create a rule that says if you say it 10, 15, 20 times, then now you've given it away. But if you only say it three or four times or even once, maybe that's not good enough. There has to be a different dividing line than that one. Mr. Morgan Absolutely, Your Honor. And this case presents the court with a great example to give some guidance in this very complicated area of law of what is not a clear and unmistakable surrender. Clearly, Hester is an extreme example. Definitely a clear and unmistakable surrender. Maybe saying it one time is enough. But the it has to be clear on the record to an objective reader of the prosecution history that what the patent applicant was doing was deliberately giving up subject matter. Mr. Chodos Why isn't it clear when the patent applicant says I'm not like the prior art because I have this feature? Mr. Morgan Because that is not a clear and unmistakable surrender. That might beg the question. But merely saying that the patent examiner in this case who cited Mochizuki against Barco, the patent examiner said Mochizuki, which deals with a completely different set of technology, has the pixel response limitation. Barco merely said no, looking at the passages of Mochizuki that you've cited against us, no it does not. That relates to voxels of an ultrasound beam. It has nothing to do with pixels at all and has nothing to do with... Mr. Chodos No, that's not quite right. He said two things. He said it doesn't have a measurement limitation and then he also said it doesn't have voxels. But in distinguishing prior art with respect to claim 33, he only relied on the measurement limitation, right? Mr. Morgan Well the measurement limitation is what the examiner had mistakenly relied on Mochizuki to cite against Barco. So obviously Barco has to traverse that and recite that back to the examiner. But in doing so, Barco didn't say my invention, the pixel response limitation, that is something very material and critical to my invention. It just said, I'm sorry examiner, you were wrong. Mr. Chodos Where does Hester of these other examiners say is critical at one point? But where does the court say that you have to use language like that? Mr. Morgan There can be, I think under this court's precedent, no bright line test for what is and is not a clear and unmistakable surrender. The context is so very, very important to answer this question. Mr. Morgan You think you can't surrender a portion of a limitation that's not critical? Mr. Morgan I'm sorry? Mr. Morgan You think you can't surrender something that's non-critical? Mr. Morgan I think that if you... Mr. Chodos What happens if you went in and instead of it being here, you know, something that is important, pixel response, and some aspect of the claim that's not terribly important, but you, 27 times, you say, that's not me. And it's not critical. You still surrendered it, right? Mr. Morgan Absolutely you have, but only... Mr. Chodos The criticality is irrelevant. Mr. Morgan You have surrendered if the language that the patent applicant uses makes it clear to the person reading the prosecution history that that was what they were doing and that is not our case. Mr. Chodos My understanding of your argument here is that what your patent prosecutor was trying to tell the examiner was not that your invention was different because you had a pixel response and they didn't, but that the examiner just wasn't very bright and didn't really understand the prior art references. That's my understanding of your argument now. Mr. Morgan We're not casting any aspersions. Mr. Chodos I know that, I know that, but you said the examiner, you wanted, you were trying to educate the examiner about what the prior art was all about. Mr. Morgan Correct. Mochizuki dealt with rendering stereoscopic images using ultras. Mr. Chodos But what an ordinary partisan walking up to, it's basically, what, seven lines, and then another seven lines in terms of the examiner's response. How would an ordinary partisan know that that was the debate as opposed to a surrender of pixel response? Mr. Morgan I think that's a very important consideration because if there is doubt, this court's law errs on the side of the examiner. Mr. Chodos I'm not saying there's not any doubt. I mean, I would assume that this would be a different case if in page 740 where you were putting in your objection, if you said, you know, please Mr. Examiner, I want you to understand that I think that you, that there's a correct way to read the prior art references as follows. You wouldn't have mentioned, right, in that explication as to what the prior art was, you wouldn't even have mentioned that you had a pixel response, right? Mr. Morgan I disagree, Your Honor, because it was the pixel response limitation that the examiner seized on. Mr. Chodos What would, just tell me in English language, what you would have said to the examiner as to why he was reading the urging correctly. Mr. Morgan I think you could have said exactly what Barclay said here, which is that you've said that Mochizuki has this limitation. Mochizuki actually has nothing of the sort. I think that's a, maybe it's a polite way of saying. Mr. Chodos So Mochizuki had the pixel response? Mr. Morgan Mochizuki did not have the pixel response. Mr. Chodos No, but that was the examiner's view? Mr. Morgan That was the examiner's view, which was incorrect, and Barclay came back and said, Mochizuki has nothing to do with pixels whatsoever. It's exclusively about voxels. Mr. Chodos But that's, if that's all they said, you'd have a good case. It's not all they said, and it's not even the predominant thing they said. They said, we have a measurement limitation, and they used that in Claim 33, where they didn't even raise the voxel argument. Mr. Morgan Well, both, Mochizuki was cited against both of the claims, Your Honor, and then as, I think as a matter of addressing the examiner's view, we said it once, we didn't say it twice. I don't know there should be a rule that for clear and unmistakable surrender, you have to emphatically state what it doesn't show each and every time. Mr. Chodos No, but when distinguishing Claim 33, it was distinguished on the ground that Mochizuki doesn't have the measurement limitation. There was no mention of a voxel limitation there, right? Mr. Morgan Correct, because Barclay had already said, with response to Claim 1, that Mochizuki doesn't have a pixel response limitation. It's only directed to voxels. Mr. Chodos So is your contention that any time you say that there are two distinctions, that neither one of them is a surrender? Mr. Morgan No, Your Honor, what I'm saying is that whatever the applicant says has to be read in its entirety in context. Mr. Chodos Well, why, if somebody said here, for example, my thing is distinguishable from the prior art, because one, it has a measurement limitation, and two, it's dealing with pixels instead of voxels. Is that a surrender as to both of those? Mr. Morgan No, Your Honor, again, it goes to the point that the surrender has to be clear and unmistakable. I mean, I would direct the court, it's not presidential, but I would direct the court to the McDermott case, which is a District of New Jersey case, which applied this court's law and found that even with respect to a claim set that originally has a limitation for an oxinger scavenger, that when prior art with alleged oxinger scavengers is cited against you, the applicant can point out correctly that no, the prior art does not have an oxinger scavenger, without thereby surrendering all that doesn't have that limitation going forward. The McDermott case is cited extensively in our briefing, and the site for that, Your Honors, is 2012 Westlaw 162867. I see that I'm eating into some of my rebuttal time. Mr. Chodos Okay, you can save your rebuttal time. That's fine. Mr. Chodos Can you just explain what more would the applicant needed to have said here beyond what Barco said, that in your estimation would have been enough for a recapture finding? Mr. Chodos In order for there to be a clear and unmistakable surrender here, Barco would have had to have said, the pixel response limitation is a very material feature to my invention. Without that, I don't have patentability. I thought you conceded in response to Judge Clevenger's question, it doesn't have to be very material for the invention. It's just any feature. Mr. Chodos Any emphatic statement that says this limitation is required for my invention, whether it be the most important or a lesser, but it has to be some kind of a statement that says, a concession to the public on the record, I am distancing myself from this limitation. Mr. Newton May it please the court. Good morning, Jared Newton for the Iso Apelles. I'll start with the Hester case because it is directly controlling to the only issue that is properly on appeal, whether these arguments distinguishing the prior art were clear and unmistakable, and Hester, the patentee did exactly what Barco did in this case. They had two limitations that they were focused on for distinguishing their claims from the prior art. One was cooking solely with steam, one was cooking with two sources of steam. The patent examiner cited throughout the prosecution different prior art references against these limitations, one of which disclosed cooking with infrared heat, and in response to those rejections, what the patentee said was, my invention requires cooking solely with steam or cooking with two sources of steam. The prior art that you've cited, including this prior art reference that discloses cooking with infrared heat, is different, and on the basis of those arguments, the claims were allowed, and it was a clear and unmistakable surrender of any claim scope that did not include those two limitations. There was a tone in Hester, the opinion, that seemed to go a little more, I mean, your summary is accurate, but it's a little on the clinical side. What was going on in Hester was the opinion describing how the applicant there declared that this particular limitation was critical and was very material to the invention, and so I guess I'm wondering, is there something to be said for when you try to analyze what is the scope of the surrender? You could on one level be surrendering whatever is in the prior art reference being asserted against you, and maybe in the context of this case, that would mean the applicant surrendered the right to claim in the future anything to do with voxels. Then there's another kind of surrender, which would be the ability to withdraw the claim element that you focused on in your arguments, and why wouldn't it be the case that only in those instances through argument, when you are clinging to a particular limitation as being material to your invention or critical to your that particular element gives you superior characteristics or is the chief feature of your invention. In those circumstances, that's when we can say that you have now surrendered the right to withdraw that limitation that you've been notifying the public as being so critical, superior, material to your invention, as opposed to simply distinguishing away disclosure in a prior art reference. The response to the first point is that this issue of scope of surrender is waived. Barco didn't argue below that there was some narrower scope of surrender besides any scope that does not include the measurement limitation. To answer your question, this goes to the question of whether there's a frequency requirement or whether there's a magic requirement that in order to give rise to a full scope of surrender that is equal to the claim limitation you relied on, whether the patentee has to use some magic words or has to say, rely on the limitation a certain number of times. What I'm trying to get to is in our reissue recapture case law, sometimes the scope of the recapture is focused on what is alleged to be in prior art. And then we say that, okay, whatever's been alleged to be in the prior art, you've given up. And so you can't have that. In other instances in our case law, we've said the scope of the surrender is broader than just the alleged reference teaching. It's the actual ability to withdraw a claim element that you're focused on to overcome that reference disclosure. That's a much broader form of surrender. And that's the form that the district court here relied on. And I'm trying to figure out if it's appropriate in this fact pattern to do that when I didn't quite see the applicant characterize the nature of his invention as hinging on the measurement limitation the way I saw it in other cases like Hester, Green-Lyant, MBO, etc. Well, I would disagree and say that this case is much closer to Hester and Green-Lyant and MBO. And if you look at the prosecution history in this case, the relevant pages are appendix 739 and 740. The patentee, Barco, did rely specifically on the measurement limitation. Our claims recite the measurement limitation. And each of the three prior art references, not just Mochizuki, but each of the three prior art references that you cited, do not disclose it. And Barco did point to what the examiner had cited from Mochizuki, which was Let me just understand the scope of your understanding of recaptured law. If there's a claim with 10 elements and then the examiner makes a prima facie rejection, relying on a bunch of references to teach the 10 elements, the applicant comes back and says, oh, your rejection is flawed. It's defective because none of those references actually teach element number four. And then the examiner goes back and looks and says, oh, you're right. Okay, here's your patent. You're saying now at that point in time, the applicant on reissue cannot withdraw element number four from any reissue claim? Yes, absolutely. Under Greenlion, under HESTER, under NBO, you can't withdraw that. And if you look at, you know, we talked about HESTER and the prior art teaching that the patentee had pointed out was infrared heat. And the court still said the scope of surrender is anything that does not include these two limitations that you relied on. Greenlion came out the same way. There, the limitation at issue was the use of this thermal oxide layer that had a TEOS reactant. And the court, in analyzing the arguments that the patentee made relying on that limitation, said that the representation you're making to the patent office, representation you're making to the public, is that that component is a necessary component of your claims. And you're surrendering the scope of any claims, any semiconductor device with a thermal oxide layer that does not include that limitation. They didn't say you're surrendering just what was different in the prior art, which were other thermal oxide layers. They said you're surrendering any claims scope that does not include that limitation. Turning to the issue, turning back to the issue of clear and unmistakable disclaimer, and this distinction that Barco has drawn between relying on a limitation to distinguish the prior art versus educating the examiner. There's no support in the case law for that distinction. And you can go back to the Greenlion and the HESTER cases. The court didn't say that in HESTER the patentee was informing the examiner about his mistaken understanding of whether cooking with infrared heat is the same thing as cooking with steam. They said that's the basis of the distinction you made, and therefore you're surrendering any claims scope that does not include that limitation. Well, which of the recapture cases talks about a clear and unmistakable surrender? I don't recall that. Which case establishes that standard? So HESTER is... No, the language. The language. The specific language. What the cases say is that someone reading the prosecution history would conclude that this was surrender. The cases, in my recollection, don't use the words clear and unmistakable. Which case... Greenlion uses it. I think it cites to NBO and to Medtronic when it uses that standard. HESTER didn't use the specific words clear and unmistakable, but they looked at the prosecution history estoppel context, and they said that that informs our recapture law, and they used the language of unmistakable assertions in support of patentability. So HESTER, because of that statement, unmistakable assertions in support of patentability, HESTER is deemed the controlling, as Barco says in his recovery, the seminal case for surrender by argument. I can point you to the page in Greenlion. I'm just an NBO at pinpoint 1314. I see a statement saying, if the patentee surrendered by argument, he must clearly and unmistakably argue that his invention does not cover a certain subject matter to overcome an examiner's rejection based on prior art. That's right, and if you look at how NBO applied that standard, they said that the scope of surrender in that case, that the subject matter that the patentee was saying his invention did not cover was subject matter that did not include the limitation he had relied on, which in that case was a slide of lever-tracting needle. And the same thing in Greenlion. Greenlion recited that same language from NBO, and it said the subject matter that the patentee is saying his claims do not cover is any subject matter that does not include this TEOS reactant limitation. And so it's the same thing in this case. Barco said the only reason, exclusively and deliberately, the only reason our claims are allowed over the prior art is because we recite the measurement limitation, and the prior art, each of these references that you've cited, does not disclose it. The only way those statements can be read consistently with Greenlion. What would your reaction be to a response to the examiner's rejection made by Barco where they came in and said, we want to explain to you what's going on here. We think that you've misread the references. And they pitched their discussion on that basis and said, perhaps said, by the way, you know, our patent has the pixel response. But they were clearly saying to the examiner, we're coming back to you, you have misapplied the references. If they said those arguments, those hypothetical arguments. No, if that was the way it had been written up. If it had been written that way and they're still saying these references do not disclose the measurement limitation, our claims do, then there's no difference. That's a clear and unmistakable surrender of claim scope under any of these cases that we've been discussing. And there's not, you know, there's not a single controlling federal circuit case that supports this distinction between educating the examiner and distinguishing prior art. I understand that they'll have a case to lean on. They want this to be that case. Right, that's correct. What I'm saying is what's wrong with if they say, we're not trying to tell you that we're surrendering any subject matter. We're just trying to explain to you what the prior art is. I mean, it's evident that their claims have the pixel response. I mean, that's clear. You know, I have to read it. But what I'm wondering is if it isn't possible to paper up a communication to an examiner where you're basically saying I'm trying to educate you. It should not be possible to paper it up if you're still relying on a limitation to distinguish your claims. You know, if you say the prior art talks about voxels or infrared heat, you know, you might be saying to the examiner, the prior art, you know, this limitation, this teaching you're relying on is not our limitation. Was the examiner's rejection anticipation or obviousness? In this case, it was an obviousness rejection. And that goes to my point about the other references that the examiner had cited. Barco went out of his way to say, not only does this one reference that you cited for the measure limitation not disclose it, but these other references that you also cited, they don't cure that deficiency. They don't disclose the measurement limitations of this limitation. And they didn't talk about any teachings from those references. Well, whatever, you had an anticipation rejection. Examiner thought the prior art taught a pixel response, and that's the reason why it was anticipated. And you came in and responded to the examiner by saying, no, no, no, we don't have a pixel response. That we have one, they don't have one. Is that a surrender? No, that wouldn't be a surrender. If it's an anticipation rejection, and the patentee is saying we require pixel response, and the prior art doesn't have it. You said the examiner read the prior art to have a pixel response in it, and therefore anticipated you. And you come in and you say, no, no, no, you're wrong. Prior art doesn't have it. We do have the pixel response limitation. They don't. That wouldn't be a surrender. Of course it would. I don't see any distinction between anticipation and obviousness. You're still talking about what does the prior art disclose? Does it disclose this limitation? And in both contexts, if you're saying our invention requires this limitation, the prior art doesn't have it, you're surrendering. You say you can't have a broadening reissue. I mean, they're coming in and saying, you've anticipated me over a prior art reference that has a pixel response in it. Well, no, I'm saying you can't have a broadening reissue that tries to recapture or tries to omit this one limitation that you said was missing from the prior art. And that's the recapture rule. You could have a broadening reissue that maybe you want to, you know, add other limitations or take out other limitations that you weren't relying on to distinguish the prior art. But you can't take out the one, the only one in this case, that you relied on to get your claims allowed in the first instance. And I see I've got about a minute left. So with the last of my time, I want to talk briefly about some of the arguments. We think this prosecution history is very clear. It's two pages of the record that are relevant. And in addition to looking at the arguments Barco did make, it's important to look at what the arguments they did not make. Because we see some of these after-the-fact arguments come up in their briefing, such as Mokuzuki's in a different field or is directed to a different problem or a different solution. Those are non-analogous art arguments that are not reflected in the prosecution history. And this court says very, very clearly in the Green Mayant case that we hold the patentee to the arguments they actually made, not the arguments they could have made. And there, the patentee said after the fact, it wasn't the TIAS limitation that distinguished our claims. It was actually these temperature and pressure characteristics that we had. The court said, well, even if there's merit to those arguments, we're not going to give any attention to them because you didn't say them in prosecution. And that's the same thing here. Okay, thank you, Mr. Morgan. Thank you very much. Mr. Morgan? Thank you, Your Honors. So in the area of prosecution history at Staple, if I recall correctly, and that's a relevant area comparable to this one, if you distinguish a piece of prior art on a ground that you didn't need to use to distinguish the prior art, it's still prosecution history at Staple, right? That's correct, Your Honor. But I think it's important to note to the court that Azo is asking this court to apply the wrong surrender standard. Azo is arguing here, as it did at the district court, that all you need to do is make a statement related to patentability and you've surrendered subject matter. That is emphatically not the law of this court. You're arguing that the prosecution history at Staple standard and the recapture standard are different? I'm arguing that the surrender standard for reissue, where it's argument only, that's the sole basis of any alleged surrender, that that standard is more exacting. Than prosecution history at Staple? Yes, Your Honor, because the standard for surrender only by argument is not the same as it is, for example, by a claim amendment, where you just amend the claims and you're sort of presumed to have surrendered. Why should the standard be different for prosecution history at Staple and recapture when we've said that the recapture rule guides us in this area? Does that prosecution history at Staple guide us in this area? They're certainly related, Your Honor. All I can tell you is that under my reading of this court's precedent in this particular issue, in the reissue surrender context, this court has only held that there's been a surrender by argument only when the patent applicant has made such emphatic statements on the record that no reasonable reader of the record could conclude anything but that they had surrendered something. That fits under a clear and unmistakable rule, right? Absolutely, Your Honor. Yes, it does, and since we are dealing in this case with an alleged surrender by argument only, there were no claim amendments, there were no narrowing claim amendments here. In that context, this court's law gives the patent applicant the benefit of the doubt. If there's any ambiguity about whether or not what the patent applicant said during prosecution is a surrender or not, then because this court requires clear and unmistakable surrender, there has been no surrender and therefore no recapture. Which case can you point to for that in terms of when it comes to argument? Here are some example cases from our court where the alleged argument wasn't clear and unmistakable enough. I would point the court to the Medtronic decision. A majority of the panel in Medtronic held that there was no clear and unmistakable surrender. Medtronic's a very complicated case, and the patent applicant said an awful lot of things relating to an awful lot of prior art references in distinguishing its invention over the prior art. But yet, despite the many statements that the patent applicant in Medtronic made related to patentability, this court held that there was no clear and unmistakable surrender and therefore no violation of the recapture rule. Okay, thank you. Thank you. Thank both counsel. The case is submitted. That concludes our session for this morning. All rise.